# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 50282 | **DATE** | 12/27/2001 |
| **CASE TITLE** | Arachnid, Inc. vs. Valley Recreation Products, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, Arachnid's motion for judgment on the pleadings is granted in part and denied in part. Valley Recreation Holding is dismissed from this lawsuit and the remainder of its motion for summary judgment is denied as moot. Fenway Holdings' motion for summary judgment is granted in part and denied in part. Both Arachnid's motions for summary judgment that Valley-Dynamo is a successor-in-interest and Valley-Dynamo's motion for summary judgment that it is not a successor-in-interest are denied. Arachnid's motion to strike the cross declaration is denied. Valley-Dynamo's motion to strike portions of Arachnid's LR 56.1(A) statement is denied. Both of Arachnid's motions to strike hearsay and unauthenticated materials are denied. Arachnid's motion to strike portions of the Geisser declaration is denied. The motions to file overlength briefs are granted. **A telephonic conference is scheduled with lead counsel for January 3, 2002 at 1:30 p.m. to be initiated by plaintiff's counsel. Be prepared to discuss settlement/mediation alternatives.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | DEC 28 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 12-27-2 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| /SEC | courtroom deputy's initials | | | mailing deputy initials |

Document Number

184

U.S. DISTRICT COURT
CLERK
01 DEC 27 PM 3:00
FILED-WD

Date/time received in central Clerk's Office


**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

ARACHNID, INC.,                          )
                                         )
         Plaintiff,                      )    No. 98 C 50282
                                         )
    v.                                   )
                                         )
VALLEY RECREATION PRODUCTS,              )
INC., VALLEY RECREATION HOLDING          )
CORP., FENWAY HOLDINGS, LLC, and         )
VALLEY-DYNAMO, LP,                       )
                                         )
         Defendants.                     )

**MEMORANDUM OPINION AND ORDER**

**I.  Introduction**

On August 31, 1998, plaintiff Arachnid, Inc. ("Arachnid")

filed a one-count complaint for patent infringement against

defendant Valley Recreation Products, Inc. ("Valley Recreation").

On April 4, 2000 Arachnid filed an amended complaint against

Valley Recreation, Fenway Holdings, LLC ("Fenway Holdings") and

Valley-Dynamo, LP ("Valley-Dynamo"), adding a state law

fraudulent conveyance claim against Valley Recreation and Fenway

Holdings and a patent infringement claim against Valley-Dynamo

under a successor-in-interest theory.  On September 26, 2000,

Arachnid filed a second amended complaint, adding Valley

Recreation Holding Corp. ("Valley Recreation Holding") as a

defendant, and adding a state law fraudulent concealment claim.

Currently pending before the court are ten motions:[1]  (1)
Arachnid's motion for judgment on the pleadings, filed pursuant
to FED.R.CIV.P. 12(c), that its second amended complaint relates
back to its amended complaint; (2) Arachnid's motion for summary
judgment, filed pursuant to FED.R.CIV.P. 56, that Valley-Dynamo
is a successor-in-interest to Valley Recreation; (3) Valley-
Dynamo's Rule 56 motion that it is not a successor-in-interest to
Valley Recreation; (4) Valley Recreation Holding's Rule 56 motion
for summary judgment regarding the state law fraudulent transfer
claims against it; (5) defendant Fenway Holdings' Rule 56 motion
for summary judgment regarding the state law fraudulent transfer
claims; (6) Arachnid's motion to strike hearsay and
unauthenticated documents offered by Valley-Dynamo; (7)
Arachnid's motion to strike hearsay and unauthenticated documents
offered by Fenway Holdings and Valley Recreation Holding; (8)
Arachnid's motion to strike the declaration of Richard Cross; (9)
Arachnid's motion to strike portions of the declaration of Andrea
Geisser; and, (10) Valley-Dynamo's motion to strike portions of
Arachnid's LR 56.1(a)(3) statement of facts.

The court has jurisdiction over the patent infringement
claim under 28 U.S.C. § 1331, and has supplemental jurisdiction
over the state law claims pursuant to 28 U.S.C. § 1367.  Arachnid

---

[1]  Valley-Dynamo, Valley Recreation Holding and Fenway
Holdings have also filed motions to file an overlength brief.
Their motions are granted.

also claims diversity jurisdiction pursuant to 28 U.S.C. § 1332.
When Arachnid filed its original complaint, though, Valley
Recreation's principal place of business was in Illinois (Valley
Recreation Answer to Am. Compl. ¶ 2) and, therefore, complete
diversity does not exist. <u>See</u> <u>Denlinger v. Brennan</u>, 87 F.3d 214,
216 (7th Cir. 1996) (relevant time for determining jurisdiction
is when suit is filed). Venue is proper pursuant to 28 U.S.C. §§
1391, 1400(b).

## II. **Background Facts**

Arachnid manufactures and designs dart games, including
automated, league-enabled dart games which allow remote dart
leagues to compete simultaneously and automatically. (Arachnid
LR 56.1(a) ¶ 7) The U.S. Patent and Trademark Office ("PTO")
granted a patent to Arachnid on its dart games in 1992. (<u>Id</u>. ¶
8)

In 1995, Fenway Holdings bought Valley Recreation, a
manufacturer of pool tables, pool cues, table soccer and air
hockey tables, cabinetry for electronic dart games, and dart
games. (<u>Id</u>. at ¶ 37; VD LR 56.1(a) ¶ 11) Technically, Fenway
Holdings owned Valley Recreation Holding, and Valley Recreation
Holding owned Valley Recreation. (Arachnid LR 56.1(a) ¶ 92) In
late 1997, Andre Geisser, a member of the Board of Directors for
Valley Recreation and Valley Recreation Holding, and a Managing
Director of Fenway Holdings, (Jt. Exh. A, Geisser Decl. ¶¶ 1-2)

began to look for a purchaser for Valley Recreation's assets. (Arachnid LR 56.1(a) ¶ 47; VD LR 56.1(a) ¶ 13)  He approached William Rickett, the President of Dynamo, Ltd. (Arachnid LR 56.1(a) ¶ 47), a competitor of Valley Recreation.

In April 1998, Valley Recreation and Dynamo executed a letter of intent to form Valley-Dynamo, a partnership.  (VD LR 56.1(a) ¶¶ 17-18)  On August 28, 1998, a Contribution Agreement was signed to form the partnership, and the agreement was closed on December 30, 1998.  (Id. ¶¶ 24, 42)  VDG Corp. is the general partner of Valley-Dynamo.  (Arachnid LR 56.1(a) ¶ 90)  At the time of the closing, Valley Recreation and Dynamo were limited partners, and each received a 50% limited partnership share. (Id. ¶ 91)  In forming the new partnership, each company contributed only certain assets.  (VD LR 56.1(a) ¶ 18)  For example, Valley Recreation's Sycamore, Illinois, plant, where it manufactured its dart games, was not part of the deal.  (Id. ¶ 54)  In addition to receiving a 50% partnership share, Valley Recreation received 1,000 shares of VDG stock and applied $11 million to extinguish debt with NationsBank.  (Arachnid LR 56.1(a) ¶ 90; Arachnid Exh. O, Geisser dep., pp. 153-55)[2]  The

---

[2]  Geisser was very particular in stating that Valley Recreation did not "receive" the $11 million; rather, it applied the proceeds to extinguish debt.  (Arachnid Exh. O, Geisser dep., pp. 154-55)

4

court will hereinafter refer to the transaction regarding Valley-Dynamo as "the Valley-Dynamo transaction."

On March 12, 1999, Valley Recreation transferred its 50% partnership interest in Valley-Dynamo to Valley Recreation Holding. (Arachnid LR 56.1(a) ¶ 94) In return, Valley Recreation received the cancellation of indebtedness it owed to Valley Recreation Holding in the amount of $3.25 million. (Jt. LR 56.1(a) ¶¶ 74-75) The court will refer to this transaction as "the March 12, 1999 transaction."

On August 3, 1999, Valley Recreation's remaining assets were sold to a German company, Lowen Automaten Gerhard W. Schulze GmbH ("Lowen"). (VD LR 56.1(a) ¶ 98) Valley Recreation still exists but it consists only of an administrative employee to administer insurance and pension benefits, and an employee to distribute spare parts to prior purchasers of Valley Recreation's game products. (Arachnid LR 56.1(a) ¶ 98) Lowen expressly disclaimed all liability that Valley Recreation or Valley-Dynamo may have to Arachnid after the date of the sale. (Id. ¶ 99) Lowen paid approximately $4.3 million, and its payments went to the NationsBank account via wire transfer. (Id. ¶ 118; Arachnid Exh. DD, Bates No. F 0042) The court will refer to this transaction as "the Lowen transaction."

Valley Recreation is currently incapable of paying creditors. (Arachnid LR 56.1(a) ¶ 119)

### III.  **Preliminary Matters**

## A.  **Arachnid's Motion To Strike The Cross Declaration**

Arachnid has moved to strike the declaration of Richard Cross, a consultant to Fenway Partners, Inc., pursuant to FED. R. CIV. P. 56(e) and FED. R. EVID. 602 and 1002.  Arachnid's motion is not well-founded and is denied.  Cross' declaration deals with a meeting the parties' representatives had, during which information about one or more transactions was discussed. Cross's declaration also addresses certain correspondence about the same subject matter.  Cross participated in the discussions and correspondence that is the subject matter of his declaration. Arachnid argues Cross attempts to impute knowledge to Arachnid's counsel about the transaction.  The court disagrees; Cross limited himself to stating what information he intended certain charts and documents to convey.  To the extent Arachnid argues Cross lacks personal knowledge as to what Arachnid understood the documents to mean, of course he does, but he is not prevented from introducing evidence of what he told Arachnid.  Cross' declaration does not violate Federal Rule of Evidence 602.

Likewise, his declaration does not violate Rule 1002. Copies of the overhead projections to which he refers in his declaration are attached thereto, and are sufficient for purposes of his declaration.

**B.** **Valley-Dynamo's Motion To Strike Portions of Arachnid's LR 56.1(a) Statement**

Valley-Dynamo argues certain paragraphs of Arachnid's LR 56.1(a) statement are "wholly immaterial" to the successor-in-interest issue and should be stricken. Valley-Dynamo's motion is as unfounded as was Arachnid's motion to strike the Cross declaration. Valley-Dynamo acts as if its motion for summary judgment were the only one Arachnid had to respond to, yet there are numerous pending motions for summary judgment. Arachnid's LR 56.1(a) was obviously drafted to respond to *all* the pending motions to address *all* issues therein, and the court appreciates *any* efforts at efficiency which reduce the amount of paper before the court. Moreover, the same attorneys represent all defendants, so Arachnid's all-inclusive approach did not result in excessive work for them. As for the paragraphs regarding Arachnid's patent infringement claim, the court agrees that some of the paragraphs could be considered irrelevant. However, some of the paragraphs were helpful, if only as background.

The paragraphs to which Valley-Dynamo objects are relevant to other defendants (who are represented by the same lawyers). Nevertheless, to compound the confusion, the other defendants incorporate Valley-Dynamo's motion to strike and also do not respond. Thus, no defendant has responded to the paragraphs to which Valley-Dynamo objects and clearly many of these paragraphs are relevant to some of the issues currently before the court.

Instead, defendants "reserve" their right to respond, should the court deny Valley-Dynamo's motion to strike. This is an improper approach under LR 56.1, which *requires* a party to support any disagreement with specific references to the affidavits, parts of the record and other supporting materials relied on. See LR 56.1(b)(3)(A). If allowed, Valley-Dynamo's approach would unnecessarily prolong the court's decisionmaking process and result in piecemeal litigation.

By engaging in such litigation tactics, defendants leave many relevant paragraphs unanswered. Those paragraphs the court finds merely helpful as background it will consider as such, specifically, paragraphs 7 through 9, 12, and 28 through 33. However, those paragraphs that were properly supported are deemed admitted pursuant to LR 56.1 for purposes of the pending Rule 56 motions, specifically, paragraphs 37 through 45, 108 through 115 (except for the first sentence in paragraph 112 and the first sentence in paragraph 114, which were not properly supported), and paragraphs 117 through 121. Paragraphs 46, 106, and 122 through 128 are largely unsupported by the record and will not be deemed admitted.

Valley-Dynamo's motion to strike is denied.

## C. **Arachnid's Motion To Strike Certain Statements of Fact, Exhibits**

Arachnid has filed a motion to strike certain exhibits and corresponding statements of fact from Valley-Dynamo's LR 56.1(a)

8

statement of facts and the joint LR 56.1(a) statement of facts of
Valley Recreation Holding and Fenway Holdings. Arachnid argues
certain exhibits are hearsay and/or lacking in foundation.
Arachnid is correct in that only materials that would be
admissible or usable at trial, including properly authenticated
and admissible documents or exhibits, are to be considered at the
summary judgment stage. See Woods v. City of Chicago, 234 F.3d
979, 988 (7th Cir. 2000), cert. denied, 122 S. Ct. 354 (2001).
It is interesting to note that Arachnid itself has not strictly
followed this rule. For example, the Fleet document (Arachnid
Exh. L) upon which it so heavily relies is not properly
authenticated. Also interesting is that Arachnid itself relies
on many of the exhibits about which it complains.

As for its argument that some of the exhibits lack
foundation, Arachnid is simply wrong. For example, magazine
articles and press releases (see, e.g., VD Exhs. J, W, FF, SS,
YY) are self-authenticating. See FED. R. EVID. 902(6). In any
event, Valley-Dynamo, Valley Recreation Holding, and Fenway
Holdings have filed supplemental affidavits from William Rickett
and Andrea Geisser, supplying the necessary foundation for the
exhibits in question.

As for hearsay, many of the exhibits are business records
and, therefore, not hearsay. See FED. R. EVID. 803(6).
Regardless, many of the paragraphs in the LR 56.1(a) statements

about which Arachnid complains are properly supported by other sources. The court will only consider those facts which are properly supported, and will not consider hearsay. Arachnid's motions to strike hearsay statements and unauthenticated materials are denied.

## D.    **Arachnid's Motion To Strike Geisser Declaration**

Arachnid has moved to strike portions of Geisser's declaration. Its basis for doing so is a discovery violation; that is, in the declaration Geisser provides information far beyond that which was provided in Fenway Holdings' responses to Arachnid's interrogatories. The court is not persuaded by Arachnid's arguments. Arachnid's interrogatories were broadly worded and Fenway Holdings' answers were responsive. Further, Arachnid had an opportunity to further explore all issues relating to the complex transactions at issue by taking Geisser's deposition, which it admits it did. Geisser was produced as a Rule 30(b)(6) deponent and Arachnid deposed him for three days. Arachnid is apparently arguing that a party is forever after limited to statements made in answers to interrogatories, despite any additional detail given in later discovery. This is a narrow view of discovery and is unsupported by the Federal Rules of Civil Procedure.

Arachnid also argues that because Fenway Holdings has not produced any minutes from Board of Directors meetings, it should

be barred from presenting evidence relating to actions taken by the Board of Directors. Arachnid's argument goes to the weight to be given Geisser's statements, not their admissibility.

Arachnid briefly claims the Geisser declaration is inconsistent with statements made during his deposition. (Arachnid Reply to Defs.' Opp. to Arachnid's Mot. To Strike Portions of Geisser Decl. at 5 n.2) Yet, despite its promise to do so, Arachnid never points out these claimed inconsistencies. Thus, the court rejects this argument.

The court has considered, and rejects, Arachnid's remaining arguments. Arachnid's motion to strike the Geisser declaration is denied.

## E. **Arachnid's Statement of Additional Facts**

In response to the various defendants' statements of additional facts, Arachnid submitted a statement of additional facts. Typically, submitting a statement of additional facts is allowed under LR 56.1(b)(3)(B). However, Arachnid's statement of additional facts is, in reality, a re-submission of its original statement of facts with more paragraphs added throughout the statement. Arachnid also took this opportunity to change some of the information contained in its original submission. (Compare Arachnid LR 56.1(a) ¶ 123 with Arachnid Add'l Facts ¶ 151) To decipher which paragraphs are "additional," the court would be forced to compare the statements, paragraph by paragraph, to

11

determine which paragraphs are new. This would result in an inordinate waste of time for the court and is in complete derogation of Local Rule 56.1. Arachnid's statement of additional facts is stricken.

## IV. **Analysis**

### A. **Arachnid's Rule 12(c) Motion Regarding Relation Back**

At the outset, the court agrees with Valley Recreation Holding and Fenway Holdings that Rule 12(c) is an improper vehicle for addressing whether Arachnid's state law fraudulent transfer claim was timely filed. Rule 12(c) permits a judgment based on the pleadings alone, and the pleadings are considered the complaint, the answer and any written instruments attached as exhibits. Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 452 (7th Cir. 1998). The pleadings in this case do not definitively establish when the transactions at issue occurred to enable the court to properly calculate the limitations period.

The court must resort to the parties' LR 56.1 statements to decide Arachnid's motion and in so doing, converts the motion to one for summary judgment. See id. at 453 n.5. Arachnid argues the court should provide notice of the conversion in accordance with Rule 12(b). However, the court finds such notice is not necessary in this case. Valley Recreation Holding has raised the same issue in its Rule 56 motion, thus affording both parties

12

ample opportunity to fully address this issue. <u>Cf</u>. <u>Massey v.</u>
<u>Helman</u>, 259 F.3d 641, 646 n.8 (7th Cir. 2001) (converting motion
to dismiss into one for summary judgment without notice does not
require reversal if there is nothing the litigant could have
submitted that would have created a genuine issue of material
fact). Thus, the court will consider the relation back issue in
Arachnid's Rule 12(c) motion in conjunction with the same issue
in Valley Recreation Holding's Rule 56 motion.

A fraudulent transfer claim brought pursuant to section
6(b) of Illinois' Uniform Fraudulent Transfer Act ("IUFTA"), 740
ILL. COMP. STAT. 160/6(b), commonly referred to as an insider
preference claim, must be filed within one year after "the
transfer was made or the obligation was incurred." <u>Id</u>. §
160/10(c).[3] Arachnid's insider preference claim in its first
amended complaint centers on two transactions: the Valley-Dynamo
transaction, which occurred on December 30, 1998 (Arachnid LR
56.1(a) ¶ 22; Valley-Dynamo LR 56.1(a) ¶ 8), and the Lowen
transaction, which occurred on August 3, 1999. (Valley-Dynamo LR

---

[3] Claims asserted under other sections of the Act are
subject to a four-year limitations period. <u>See</u> 740 ILL. COMP.
STAT. 160/10. It is not clear from the second amended complaint
whether Arachnid's fraudulent transfer claims are brought
pursuant to only section 6(b) of the IUFTA. Arachnid's Rule
12(c) motion is limited to a discussion of only insider
preference claims. The court's discussion regarding the one-year
limitations period is likewise limited solely to claims brought
pursuant to section 6(b).

56.1(a) ¶ 98) Arachnid filed its first amended complaint on March 13, 2000.[4]

The first time Arachnid raised any fraudulent conveyance claims was on March 13, 2000, when it filed its first amended complaint. The Valley-Dynamo transaction was completed on December 30, 1998; this date falls outside the IUFTA's one-year limitations period. Thus, any insider preference claim based on the Valley-Dynamo transaction is untimely. Conversely, an insider preference claim based on the Lowen transaction is timely.

In its second amended complaint, filed on September 26, 2000, Arachnid raises for the first time the March 12, 1999 transaction, when Valley Recreation transferred its 50% ownership interest in Valley-Dynamo to Valley Recreation Holding, and adds Valley Recreation Holding as a defendant. (Sec. Am. Compl. ¶ 22) Arachnid argues its claim based on this transaction is timely because the second amended complaint relates back to the date it filed the first amended complaint.

Relation back under Rule 15(c)(2) is permitted if the claim in the amended pleading arose out of the same conduct,

---

[4] Although the court did not grant Arachnid leave to file the first amended complaint until April 4, 2000, the operative filing date, for statute of limitations purposes, is the date Arachnid filed its motion for leave to amend the complaint. See Mayes v. AT&T Info. Sys., Inc., 867 F.2d 1172, 1173 (8th Cir. 1989); Greenfield v. Shuck, 856 F. Supp. 705, 711 (D. Mass. 1994).

14

transaction, or occurrence set forth or attempted to be set forth in the original pleading. FED.R.CIV.P. 15(c)(2); Donnelly v. Yellow Freight Sys., Inc., 874 F.2d 402, 410 (7th Cir. 1989), aff'd, 494 U.S. 820 (1990). In general, relation back is permitted if an amended complaint asserts a new claim based on the same core of facts but involves a different substantive legal theory. Bularz v. Prudential Ins. Co. of Am., 93 F.3d 372, 379 (7th Cir. 1996). In considering whether an amended complaint relates back to the original pleading, the court cannot consider untimely claims. Henderson v. Bolanda, 253 F.3d 928, 932 (7th Cir. 2001). Thus, in considering whether the second amended complaint relates back to the first amended complaint, the court must first determine whether the March 12, 1999 transaction between Valley Recreation and Valley Recreation Holding is related to the Lowen transaction. The court finds it is. According to Valley Recreation Holding, Valley Recreation's 50% partnership interest in Valley-Dynamo was sold to Valley Recreation Holding to better position Valley Recreation for sale to Lowen. (Arachnid Exh. O, Geisser dep., pp. 257-58) Thus, the two transactions arose out of the same conduct and transaction for purpose of Rule 15(c)(2).

However, whether Arachnid can properly add Valley Recreation Holding is a different issue, governed by Rule 15(c)(3). To allow an amendment which changes the party or the naming of the

15

party against whom a claim is asserted to relate back to the date of the original complaint, three requirements must be met. FED.R.CIV.P. 15(c)(3); Wilke v. Bob's Route 53 Shell Station, 36 F. Supp. 2d 1068, 1072 (N.D. Ill. 1999). First, the claim or defense asserted in the amended pleading must arise out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. Id. Second, the party to be brought in must be properly served and receive such notice of the lawsuit that the party will not be prejudiced in maintaining a defense on the merits. Id. Third, the party knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party. Id.

Here, the first two requirements are met. As stated above, the claim Arachnid asserts against Valley Recreation Holding arises out of the same transactions set forth in the first amended complaint. As for notice, Valley Recreation Holding is the parent company of Valley Recreation and Valley Recreation's notice of the lawsuit is imputed to Valley Recreation Holding. See Woods v. Indiana Univ.-Purdue Univ. at Indianapolis, 996 F.2d 880, 894 n.9 (7th Cir. 1993) (Rovner, J.) (concurring) (notice most often imputed in parent and subsidiary scenario, or with closely related corporations); Norton v. International Harvester Co., 627 F.2d 18, 21 (7th Cir. 1980) (same).

The mistake requirement is independent from whether the purported substitute party knew that the action would be brought against it. <u>King v. One Unknown Fed. Corr. Officer</u>, 201 F.3d 910, 914 (7th Cir. 2000). The Seventh Circuit has defined "mistake" to mean the misnomer of a defendant where the effect is merely to correct the name under which he is sued. <u>Worthington v. Wilson</u>, 8 F.3d 1253, 1256 (7th Cir. 1993). It does not include adding or substituting a new defendant by amendment after the limitations period has run. <u>Id</u>. "The goal of relation-back principles is 'to prevent parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors to sustain a limitations defense.'" <u>Advanced Magnetics, Inc. v. Bayfront Partners, Inc.</u>, 106 F.3d 11, 19 (2d Cir. 1997) (quoting FED. R. CIV. P. 15(c) Advisory Committee Note (1991)).

Here, Arachnid has not made a mistake in the sense of mistakenly suing one corporate entity, such as Valley Recreation, when it really meant to sue Valley Recreation Holding. On the contrary, Arachnid is trying to add Valley Recreation Holding after the limitations period has run, in an attempt to cast its net wider so as to end up with a defendant with assets. Rule 15(c)(3) was not meant to be used to circumvent the limitations period under such circumstances. <u>Worthington</u>, 8 F.3d at 1256; <u>see also</u> <u>Harris v. Etan Indus., Inc.</u>, No. 98 C 4718, 1999 WL

586966, at *2 (N.D. Ill. Mar. 16, 1999) (Rule 15(c) never
intended to assist a plaintiff who ignores or fails to respond in
a reasonable fashion to notice of a potential party or engage in
piecemeal litigation); <u>Dybala v. Landau and Heyman, Inc.</u>, No. 94
C 7719, 1997 WL 162846, at *6 (N.D. Ill. Mar. 27, 1997) (barring
plaintiff's third amended complaint because it was brought to
substitute one defendant for another under successor liability
theory, not because of a mistake as to identity or name of proper
defendant). Thus, Valley Recreation Holding is dismissed from
this lawsuit.

**B. Fenway Holdings' Rule 56 Motion**

### 1. Section 9(b) of the IUFTA

If a transfer is found to be voidable under section 8(a)(1)
of the IUFTA, judgment for the value of the asset transferred or
the amount necessary to satisfy the creditor's claim, whichever
is less, may be entered against:

> (1)  the first transferee of the asset or the person for
> whose benefit the transfer was made; or
> (2)  any subsequent transferee other than a good-faith
> transferee who took for value or from any subsequent
> transferee.

740 ILL. COMP. STAT. 160/9(b)(1),(2).

Fenway Holdings argues even if the transfers at issue were
found to be fraudulent, judgment cannot be entered against it
because it was not the "first transferee" or "the person for
whose benefit the transfer was made." The categories

"transferee" and "entity for whose benefit the transfer was made"
are mutually exclusive. <u>Bonded Fin. Serv., Inc. v. European</u>
<u>Amer. Bank</u>, 838 F.2d 890, 896 (7th Cir. 1988).[5] The minimum
requirement for status as a "transferee" is dominion over the
money or other asset, the right to put the money to one's own
purposes. <u>Id</u>. at 893. The "entity for whose benefit the
transfer was made" is different from a transferee, immediate or
subsequent. <u>Id</u>. at 895. Such an entity is a guarantor or
debtor; someone who receives the benefit but not the money. <u>Id</u>.
In explaining the category, "entity for whose benefit the
transfer was made," the Seventh Circuit stated:

> debtors often pay money to A for the benefit of B; that B
> may indeed have arranged for the payment (likely so if B is
> an insider of the payor); that but for the payment B may
> have had to make good on the guarantee or pay off his own
> debt; and accordingly that B should be treated the same way
> initial recipients are treated. If B gave value to the
> bankrupt for the benefit, B will receive credit in the
> bankruptcy, and if not, B should be subject to recovery to
> the same extent as A. . . Someone who receives the money
> later on is not an "entity for whose benefit such transfer
> was made"; only a person who receives a benefit from the
> initial transfer is within this language.

<u>Bonded</u>, 838 F.2d at 896 (citations omitted).

Arachnid argues Fenway Holdings was either the transferee or
the entity for whose benefit the transfer was made with respect

---

[5] In <u>Bonded</u>, the Seventh Circuit defined the meaning of
"transferee" under section 550 of the Bankruptcy Code. Both
Arachnid and Fenway Holdings agree cases interpreting the
Bankruptcy Code apply with equal force to the IUFTA. (Fenway
Holdings Mem. Supp. Summ. J. at 6 n.2; Arachnid Resp. in Opp. to
Fenway Holdings' Summ. J. Mot. at 3 n.6)

to all three transactions at issue.  The following is an analysis of each transaction.

### a.   the Valley-Dynamo transaction

Fenway Holdings borrowed approximately $155 million from NationsBank in September 1995 to purchase Valley Recreation and other subsidiaries.  (Arachnid LR 56.1(a) ¶¶ 37, 38)  Valley Recreation pledged all of its assets as collateral for the NationsBank loan proceeds.  (Id. ¶ 39; Joint LR 56.1(a) ¶ 37) Pursuant to the terms of an agreement with NationsBank, Fenway Holdings and Valley Recreation were obligated to make payments on the NationsBank loan into a concentration account at NationsBank. (Arachnid LR 56.1(a) ¶ 40)  Fenway Holdings controlled the NationsBank account.  (Id.)

In 1997, Valley Recreation started having problems meeting its debt obligations.  (Id. ¶ 46)  In late 1997, Fenway Partners, Inc., Fenway Holdings, or Valley Recreation (the parties dispute which company initiated negotiations and the record is not clear) approached William Rickett of Dynamo, Ltd. ("Dynamo"), a competitor of Valley Recreation.  (Id. ¶ 47)  Valley Recreation and Dynamo created a limited partnership, Valley-Dynamo.  (Id. ¶ 49)  VDG Corporation ("VDG") is the sole general partner of Valley-Dynamo; at the time of the transaction, VDG issued 1,000 shares of stock to Valley Recreation and 1,000 shares of stock to Rickett.  (Id. ¶¶ 89-90)  Valley Recreation and Dynamo each

20

received equal 50% limited partnership shares in Valley-Dynamo.
(Id. ¶ 91)

Valley Recreation and Dynamo each contributed certain assets
to Valley-Dynamo. However, Valley Recreation's assets had been
pledged as collateral to secure outstanding debt owed to
NationsBank from when Fenway Holdings purchased Valley
Recreation. (Joint LR 56.1(a) ¶ 37) To get NationsBank's
consent to a transfer of secured contributed assets to Valley-
Dynamo, Valley Recreation agreed it would pay down a substantial
portion of the debt at the time the transaction closed,
approximately $15 million. (Id. ¶ 39) Thus, as part of the
Valley-Dynamo transaction, Valley Recreation and Dynamo agreed
that Valley-Dynamo would obtain $30 million in senior secured
financing from Fleet National Bank at the closing of the
transaction. (Id. ¶ 40) From the proceeds of that loan, $15
million would be paid directly to NationsBank to release Valley's
indebtedness and the encumbered assets. (Id.) In reality, at
the time the transaction closed, Valley-Dynamo was able to secure
less financing than originally anticipated, and Valley Recreation
received $11 million to reduce its outstanding indebtedness.
(Id. ¶ 54)

Arachnid argues Fenway Holdings was an initial transferee
within the meaning of the IUFTA because it ultimately controlled
the NationsBank account into which the $11 million was

transferred.  The court finds Fenway Holdings was not a "first
transferee" within the meaning of the IUFTA.  Even assuming
Fenway Holdings had dominion and control over the NationsBank
account, it is undisputed Fenway Holdings never directly received
any funds of Valley Recreation.  Receipt of the transferred
property is a necessary element to be considered a "first
transferee" and simply directing a transfer is not enough.  See
In re Blackburn Mitchell Inc., 164 B.R. 117, 126-27 (N.D. Cal.
1994).

     The language of the IUFTA supports this conclusion.
"Transfer" in the IUFTA is defined to mean "every mode, direct or
indirect, absolute or conditional, voluntary or involuntary, of
disposing of or parting with an asset or an interest in an asset,
and includes payment of money[.]"  740 ILL. COMP. STAT. 160/2(1).
"Asset" is defined as "property of a debtor."  Id. § 160/2(b).
Thus, to be a first transferee of an asset under section nine,
the entity must actually receive the property of the debtor.  See
Blackburn Mitchell, 164 B.R. at 126.  Here, Fenway Holdings did
not receive the $11 million.

     As for whether Fenway Holdings was an entity for whose
benefit the transfer was made, Fenway Holdings asserts it was
neither a borrower nor a guarantor of the NationsBank debt.
(Joint LR 56.1(a) ¶ 63)  However, in his deposition, Geisser
states the debt was ultimately Fenway Holdings' debt and Fenway

Holdings, along with all the subsidiaries, was responsible for the debt. (Arachnid Exh. O, Geisser dep., pp. 16-17) It is not clear what Geisser meant when he said Fenway Holdings was responsible for the debt. The court agrees with Arachnid that questions of fact exist as to whether Fenway Holdings is an entity for whose benefit the transfer of the $11 million to NationsBank was made.

###### b. The March 12, 1999 Transfer

On March 12, 1999, Valley Recreation transferred its 50% limited partnership interest in Valley-Dynamo to Valley Recreation Holding. (Joint LR 56.1(a) ¶ 73) In exchange, Valley Recreation received the cancellation of indebtedness it owed to Valley Recreation Holding in the amount of $3.25 million. (Id. ¶ 74) Specifically, the transaction involved multiple steps:

- Prior to the March 12 transfer, Valley Recreation owed various affiliates of Fenway Partners ("Fenway affiliates"), but not Fenway Holdings, approximately $12.02 million pursuant to unsecured promissory notes;
- The Fenway affiliates transferred $3.25 million of the Valley Recreation notes to Valley Recreation Holding;
- Valley Recreation Holding issued a note in favor of the Fenway affiliates, so that Valley Recreation Holding now owed the Fenway affiliates $3.25 million it previously had not owed;

23

- Valley Recreation's $12.02 million note was cancelled, and Valley Recreation then reissued a note in favor of the Fenway affiliates for $8.77 million and issued three notes in favor of Valley Recreation Holding for $3.25 million; and,

- In exchange for the 50% limited partnership share, Valley Recreation Holding cancelled the $3.25 million Valley Recreation owed it pursuant to the reissued notes.

(<u>Id</u>. ¶¶ 76-78)

Thus, after the transaction, Valley Recreation's debt had been reduced by $3.25 million, Valley Recreation Holding owed the Fenway affiliates $3.25 million, and Valley Recreation Holding held the 50% partnership interest in Valley-Dynamo. (<u>Id</u>. ¶ 80) Fenway Holdings did not receive any assets or cash from Valley Recreation or Valley Recreation Holding in the transaction. (<u>Id</u>. ¶ 95) Fenway Holdings was not among the Fenway affiliates to whom Valley Recreation owed the original $12.02 million in subordinated promissory notes. (<u>Id</u>. ¶ 96)

The above facts show Fenway Holdings clearly was not a "first transferee" within the meaning of the IUFTA, for the same reason it was not a "first transferee" in the Valley-Dynamo transaction. There is no evidence Fenway Holdings dominated or controlled the transfer of the Valley-Dynamo partnership interest

from Valley Recreation to Valley Recreation Holding, nor did Fenway Holdings receive any assets of Valley Recreation in the transfer.

Arachnid argues Fenway Holdings was an entity for whose benefit the transfer was made because it "indirectly" benefitted from the transfer. (Arachnid Resp. in Opp. to FH's Summ. J. Mot. at 16-18) Specifically, Arachnid argues the benefit to Fenway Holdings was a strengthened ability to borrow money or take advantage of a distribution system. Arachnid offers no evidence in support of this claim, and it is unclear how transferring the partnership interest to Valley Recreation Holding increased Fenway Holdings' ability to borrow money. The court agrees with Fenway Holdings that the cases on which Arachnid relies (Arachnid Resp. in Opp. to FH's Summ. J. Mot. at 17) address the separate issue of whether fair consideration inhered in a conveyance, and the court finds them to be inapposite. Arachnid also argues that transferring the partnership interest facilitated Fenway Holdings' ability to sell Valley Recreation. Aside from being based on sheer speculation, such an indirect benefit does not qualify as a benefit within the meaning of the IUFTA.

### c. **The Lowen Transfer**

In August 1999, Valley Recreation's remaining assets were sold to Lowen for approximately $4.25 million. (Arachnid LR 56.1(a) ¶¶ 97, 116) According to the asset purchase agreement,

Lowen was to pay the purchase price in installments, paying the money directly into a bank account at NationsBank via wire transfer.[6] (Id. ¶ 117-18) By the time of the Lowen transaction, however, the NationsBank loan had been paid off. (Id. ¶¶ 122-23)

Fenway Holdings was not a "first transferee" within the meaning of the IUFTA for the same reason it was not a "first transferee" in the transactions discussed above. However, questions of fact exist as to whether Fenway Holdings benefitted from the transfer; after all, no one has offered any evidence to explain where the $4.25 million went.

## 2. **Whether The Transfers Were Fraudulent**

Fenway Holdings incorporates Valley Recreation Holding's arguments regarding Arachnid's IUFTA claims. Arachnid initially argues this is improper; however, in the interest of efficiency, the court will allow this approach in this instance. Specifically, Fenway Holdings argues Arachnid has failed to produce evidence that any of the three transactions at issue were fraudulent. The court finds questions of fact exist regarding Arachnid's actual and/or constructive fraud claim under the

---

[6] At the time of the Lowen transaction, NationsBank had changed its name to Bank of America, N.A. (Arachnid LR 56.1(a) ¶ 116) For simplicity, the court will continue to refer to it as NationsBank.

IUFTA, see 740 ILL. COMP. STAT. 160/5(a)(1), (2), as to the Valley-Dynamo and March 12, 1999 transactions.

Arachnid appears to concede the sale of Valley Recreation's remaining assets to Lowen was not fraudulent, as it does not address this transaction in its response to Valley Recreation Holding's summary judgment motion. Thus, the court finds Arachnid has failed to produce evidence of fraud with respect to the sale of Valley Recreation's remaining assets to Lowen. Lowen was not an insider to Valley Recreation or any other defendant in this lawsuit, the parties negotiated at arm's length, and there is no evidence the $4.25 million Lowen paid for Valley Recreation's remaining assets was less than a reasonably equivalent value.

## C.   **Valley-Dynamo's and Arachnid's Rule 56 Motions**

Both Arachnid and Valley-Dynamo have moved for summary judgment on the issue of whether Valley-Dynamo is a successor corporation to Valley Recreation.[7]  The court will address both motions in this section.

### 1.   **Choice Of Law**

Initially, the court must determine what law governs the issue of whether Valley-Dynamo is a successor corporation to Valley Recreation.  Arachnid argues federal common law of

---

[7]  Arachnid has limited its successor-in-interest claim in its Rule 56 motion to the Valley-Dynamo transaction.  (Arachnid Mem. Supp. Summ. J. at 2)

successor liability should apply.  The court disagrees.  Cases which warrant the creation and application of federal common law are few and restricted.  <u>Atherton v. FDIC</u>, 519 U.S. 213, 218 (1997).  The existence of a federal statute does not automatically mean Congress intended the courts to create common law rules.  <u>Id</u>.  Thus, normally when courts decide to fashion rules of federal common law, the guiding principle is that a significant conflict exists between some federal policy or interest and state law.  <u>Id</u>.

Here, Congress has enacted federal statutes governing patents, and there is no question patents are of paramount Constitutional importance.  <u>See</u> U.S. CONST. art. I, § 8, cl. 8. However, the federal patent statutes do not set forth corporate standards regarding successor liability.  <u>Cf</u>. <u>Atherton</u>, 519 U.S. at 219.  Arachnid invokes the need for uniformity as justification for creating federal common law.  (Arachnid Mem. Supp. Summ. J. That VD Is Liable As Successor-In-Interest at 4-5) It has failed to justify such a need; corporations and other business organizations routinely deal with disparities in corporate governance.  <u>See</u> <u>Atherton</u>, 519 U.S. at 220.  In short, the court finds no significant conflict with, or threat to, a federal interest, and this is not one of those few and restricted instances in which federal common law should be created.  <u>Cf</u>. <u>id</u>. at 225.

Valley Recreation argues Delaware law governs Arachnid's successor liability claim. It first argues the choice-of-law provisions in the Contribution Agreement and Limited Partnership Agreement (Valley-Dynamo LR 56.1(a) ¶¶ 44-45) dictate this result. The court disagrees. A choice-of-law provision in an asset purchase agreement does not preclude the application of another state's law when addressing a successor liability issue. <u>Kessinger v. Grefco, Inc.</u>, 875 F.2d 153, 155 (7th Cir. 1989). A separate choice-of-law analysis must be conducted for each issue in the case. <u>Ruiz v. Blentech Corp.</u>, 89 F.3d 320, 324 (7th Cir. 1996), <u>cert. denied</u>, 519 U.S. 1077 (1997). Successor liability is a matter of corporate law, to which Illinois courts apply "the most significant contacts" test. <u>See</u> <u>id.</u> at 326.

Valley-Dynamo argues even under this approach Delaware law applies because the majority of the business organizations involved were incorporated in Delaware. (Valley-Dynamo Mem. Supp. Summ. J. That It Is Not Successor-in-Interest at 7-8) The court disagrees that the place of incorporation provides the most significant contact. On the contrary, the principal place of business is important. <u>See</u> <u>Ruiz</u>, 89 F.3d at 326. Here, Arachnid's principal place of business is Illinois. (Second Am. Compl. ¶ 1) Valley Recreation's principal place of business was arguably Michigan (<u>see</u> <u>id.</u> ¶ 2) until its Bay City, Michigan plant closed (Valley-Dynamo LR 56.1(a) ¶ 60). Thereafter, its

29

remaining plant was located in Sycamore, Illinois (Arachnid LR 56.1(a) ¶ 10), until the plant was sold to Lowen (Valley-Dynamo LR 56.1(a) ¶ 98). It was at the Sycamore plant where its dart game that is the subject of Arachnid's patent infringement claim was produced. (Valley-Dynamo LR 56.1(a) ¶ 12) The remaining business organizations had their principal places of business in Michigan (Valley Recreation Holding), New York (Fenway Holdings), and Texas (Valley-Dynamo and Dynamo) (Arachnid LR 56.1(a) ¶¶ 16, 18, 21), but neither party argues the laws of these states should apply.

Thus, between Delaware and Illinois, the court finds Illinois to have the most significant contacts. Arachnid is claiming patent infringement and fraud. Any alleged infringement occurred in Illinois, and the effects of any allegedly fraudulent activities were felt in Illinois. Valley-Dynamo argues the court should concentrate on the contacts surrounding the actual transfer of assets from one company to another, not the contacts involved in the underlying alleged tort. (Valley-Dynamo Mem. Supp. Summ. J. That It Is Not Successor-in-Interest at 8) Even under Valley-Dynamo's approach, it has failed to explain how Delaware is the place where the contacts surrounding the actual transfer of assets from one company to another occurred. For example, there is no evidence either the Contribution Agreement nor the Limited Partnership Agreement were negotiated in

Delaware, nor is there any evidence the transfer of assets occurred in Delaware.  The court will apply Illinois law to the successor liability issue.

### 2.   **Successor Liability Under Illinois Law**

The general rule in Illinois is that a successor entity does not assume the liability of its predecessor.  <u>Vernon v. Schuster</u>, 688 N.E.2d 1172, 1175 (Ill. 1997).  There are four exceptions to this general rule:  (1) where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations.  <u>Id</u>. at 1175-76. Arachnid seeks to invoke the first three exceptions.

### a.   **Express or implied agreement of assumption**

Arachnid argues Valley-Dynamo expressly assumed Valley Recreation's debts and liabilities, as evidenced by language in the Contribution Agreement. (Arachnid Mem. Supp. Summ. J. That VD Is Liable As Successor-In-Interest at 30)  Contrary to Arachnid's argument, the language of the Contribution Agreement expressly excludes any debts or liabilities relating to Valley Recreation's dart business.  The Contribution Agreement explicitly defined which of Valley Recreation's and Dynamo's assets were <u>not</u> contributed to the Valley-Dynamo limited partnership.  (VD LR

31

56.1(a)(3) ¶ 27)   Specifically, section 2.4 of the Contribution

Agreement states:

> The following assets of the Companies shall be excluded from
> the assets to be contributed to the Partnership hereunder
> (the "Excluded Assets"):
>
> ***
>
> (b)   all assets relating exclusively to the Valley Dart
> Business, including without limitation all licenses and
> permits relating thereto, and those assets set forth on
> Schedule 2.4(b)[.]

(Arachnid Exh. M, Bates No. F 0734)

The Valley Dart Business is defined as "the manufacture,

distribution and sale of darts, dart-boards and other dart game

related products (the 'Valley Dart Business')."   (Id. at Bates

No. F 0728, F 0719)   Section 2.6 of the Contribution Agreement

states:

> Retained Liabilities.   Notwithstanding anything in this
> Agreement to the contrary, the Partnership is not assuming,
> will not perform and will have no liability with respect to
> any of the following obligations or liabilities (the
> "Retained Liabilities"):
>
> ***
>
> (d)   any obligations or liabilities relating to the Valley
> Dart Business, including without limitation the obligations
> and liabilities set forth on Schedule 2.6(d)[.]

(Id. at F 0735-36; see also LR 56.1(a) ¶ 30)

It is undisputed Arachnid's claims relate to Valley

Recreation's dart business.   It is also clear from the above

language that Valley-Dynamo did not expressly or impliedly assume

any liabilities stemming from this lawsuit.

Arachnid's lawsuit had been filed by the time the
Contribution Agreement was closed in December 1998 and is not
specifically mentioned in the Contribution Agreement as one of
Valley Recreation's retained liabilities.  (See Arachnid Exh. M
at Bates No. F 0979)  Arachnid argues the failure to specifically
list the lawsuit shows the parties intended for Valley-Dynamo to
assume the liabilities associated with this case.  Again, this
argument ignores the language of section 2.6(d).  (See id. at
Bates No. F 0736 ("*including without limitation* the obligations
and liabilities" in Schedule 2.6(d)) (emphasis added).

### b.  **A *de facto* merger**

The second exception has been interpreted to include a *de
facto* merger.  Steel Co. v. Morgan Marshall Indus., Inc., 662
N.E.2d 595, 599 (Ill. App. Ct. 1996).  To establish a *de facto*
merger, the following factors must be present:  (1) there is a
continuity of the business enterprise between seller and buyer,
including continuity of management, employees, location, general
business operations, and assets; (2) there is a continuity of
shareholders, in that shareholders of the seller become
shareholders of the buyer so that they become a constituent part
of the buyer corporation; (3) the seller ceases operations and
dissolves as soon as possible after the transaction; and (4) the
buyer assumes those liabilities and obligations necessary for the
uninterrupted continuation of the seller's business.  Id at 599-

600.  The most important factor to consider is the identity of ownership of the new and old corporation.  Id. at 600.

The court finds questions of fact exist as to whether a *de facto* merger occurred.  As to continuity of business enterprise, there is evidence certain Valley Recreation officers and/or directors became officers and/or directors of VDG Corp., a small percentage of Valley Recreation employees became Valley-Dynamo employees (VD LR 56.1(a) ¶¶ 80-81),[8] the Shakopee plant remained open and became part of Valley-Dynamo (id. ¶ 80), and Valley-Dynamo continued producing approximately half of Valley Recreation's product lines and using approximately thirty percent of its suppliers. (Id. ¶¶ 83-87)

More importantly, a jury could find continuity of ownership. This factor is difficult, but not impossible, to analyze in the present context, as Valley-Dynamo is a limited partnership which, by definition, does not have shareholders.  When the deal closed in the Valley-Dynamo transaction, its formation was as follows: VDG Corp. was the general partner, and Dynamo and Valley Recreation were the limited partners.  (Arachnid LR 56.1(a) ¶ 23; VD LR 56.1(a) ¶ 92)  Both Dynamo and Valley Recreation owned a fifty percent limited partnership interest in Valley-Dynamo.  (VD LR 56.1(a) ¶ 92)  VDG Corp. was comprised of Valley Recreation,

---

[8]  In fact, half of VDG's Board of Directors came from Valley Recreation.  (VD LR 56.1(a) ¶ 89)

Valley Recreation Holding, DynaManagement, Inc., Dynamo Corp.,
and Dynamo, Ltd. (Arachnid Exh. M, Contribution Agreement, at
Bates No. F 0730), and Valley Recreation was a shareholder of
VDG. (VD LR 56.1(a) ¶ 88) Thus, when the dust settled after the
Valley-Dynamo transaction, Valley Recreation was a shareholder of
the general partner and the limited partner of Valley-Dynamo.
This shows continuity of ownership.

Valley-Dynamo argues there was no continuity of ownership
because Valley Recreation Holding, the shareholder of Valley
Recreation, did not become a shareholder of Valley-Dynamo by
virtue of the Contribution Agreement. (Valley-Dynamo Mem. Supp.
Summ. J. That It Is Not Successor-In-Interest at 22) This raises
a puzzling issue. The Contribution Agreement defines the "Valley
Participants" of VDG to include Valley Recreation Holding.
(Arachnid Exh. M, Contribution Agreement, at Bates Nos. F 0719, F
0726, F 0729, F 0730) Thus, Valley Recreation Holding was part
owner, so to speak, of VDG, even though it is difficult to
understand Valley Recreation Holding's role when it did not
receive any stock. Regardless, Valley Recreation Holding
received Valley Recreation's partnership interest three months
later (Arachnid LR 56.1(a) ¶ 94; VD LR 56.1(a) ¶ 92), and a jury
could conclude this step was fabricated to cover-up a continuity
of ownership.

### c.    **Mere continuation**

Arachnid also argues separately that Valley-Dynamo is a "mere continuation" or "substantial continuation" of Valley Recreation. (Arachnid Mem. Supp. Summ. J. That VD Is Liable As Successor-In-Interest at 25-30) The *de facto* merger and mere continuation exceptions to successor corporation nonliability are inseparable. Steel Co., 662 N.E.2d at 600. Thus, the court's analysis above is equally applicable to the "mere continuation" exception.

### V.    **Conclusion**

For the reasons set forth above, Arachnid's motion for judgment on the pleadings that its second amended complaint relates back to its first amended complaint is granted in part and denied in part. Valley Recreation Holding is dismissed from this lawsuit and the remainder of its motion for summary judgment is denied as moot. Fenway Holdings' motion for summary judgment regarding Arachnid's fraudulent transfer claims is granted in part and denied in part. Both Arachnid's motion for summary judgment that Valley-Dynamo is a successor-in-interest and Valley-Dynamo's motion for summary judgment that it is not a successor-in-interest are denied. Arachnid's motion to strike the declaration of Richard Cross is denied. Valley-Dynamo's Motion To Strike Portions of Arachnid's LR 56.1(a)(3) Statement of Facts is denied. Arachnid's motions to strike hearsay

statements and unauthenticated materials in Valley-Dynamo's LR
56.1(a) statement of facts and in Valley Recreation Holding and
Fenway Holdings' LR 56.1(a) statement of facts are denied.
Arachnid's motion to strike portions of the Geisser declaration
is denied.  The motions of Valley Recreation Holding, Valley-
Dynamo, and Fenway Holdings to file an overlength brief are
granted.

One final point.  The court is not pleased with the way in
which the parties have litigated this case via these motions.
The parties filed numerous motions, overly lengthy briefs and
have not shown one iota of cooperation with each other.  More
daunting, they have yet to reach the main issue – whether Valley
Recreation infringed Arachnid's patent.  Moreover, the way in
which they responded to each other's respective LR 56.1(a)
statements of facts oftentimes left the court in the dark as to
what the true "facts" were, resulting in needless additional work
for the court, which thoroughly defeats the purpose of Local Rule
56.1.

**E N T E R :**

**PHILIP G. REINHARD, JUDGE**
**UNITED STATES DISTRICT COURT**

DATED: _December 23, 2001_